Good morning, everyone, and welcome to the Ninth Circuit. At this moment we wanted to commemorate, really in observance of 9-11, a moment of silence. So if you wouldn't mind, we'd like to take a moment of silence at this point. Thank you. And, again, I wanted to thank—today we're joined by Judge Fitzgerald, who is joining us from the Central District of California. I want to say thank you again for your help all week. We appreciate your help. Judge Fitzgerald Well, thank you for the invitation, Judge Mendoza. Let's see. We have a number of cases today, two of which are submitted on the briefs. The first matter that's submitted on the briefs is Patel v. Merrick-Garland. That's 23-19-04. That matter is submitted on the briefs. Next matter is 23-32-38. That's Gonzalez-Escobedo v. Merrick-Garland. That matter is also submitted on the briefs. That's 23-32-38. The first matter that we're going to hear oral argument on is United States v. Sanchez-Cruz. And, let's see, Mr. Blas, whenever you're ready. Mr. Blas Thank you, Your Honor. John Ballas on behalf of the defendant, Fidel Sanchez-Cruz. I intend to reserve two minutes for rebuttal. Judge Mendoza If you can keep track of your time. Mr. Ballas I will. Mr. Sanchez-Cruz pled guilty to a large marijuana conspiracy in the Shasta Trinity National Forest. This is a sentencing appeal. The first issue is that the district court erred in applying a four level enhancement for a role in the offense because the evidence did not show that he was a leader or organizer of the marijuana offenses. The preponderance of the evidence must show that the defendant was an organizer or leader, not merely that he was more culpable than others in the offense. Judge Mendoza Counsel, can you move to the second issue? I'm interested and I have some questions about that. And that is the enhancement as to the firearm. I guess my question to you is this. This was not a case where there was a plea agreement, was there? Mr. Sanchez-Cruz No plea agreement. Judge Mendoza So there weren't stipulated facts, correct? Mr. Sanchez-Cruz Correct. So what facts, it's my understanding that the district court judge based his decision to apply the two level enhancement of firearm based upon what was in the pre-sentence investigation report. Would that be accurate? Yes. And what was in the pre-sentence investigation report as a basis for his conclusion that the two level enhancement should apply were two things that he stated. Number one was the statements from the daughter. And second, the judge stated, but perhaps incorrectly, that the ID was found in the room where the father, or Mr. Sanchez-Cruz stayed. That fact was incorrect. Is that a fair understanding? Yeah, I think it was found in the residence, but not the bedroom. Okay, well, why isn't that enough? Why isn't it enough that he stayed in that room and therefore the firearm was found in that room, the 20 gauge unloaded, I believe, unloaded shotgun was found in that room? Well, two reasons is that there were multiple people at the residence, his ex-wife, children, other people who could visit. Our position is that he did stay there at times, but he had another residence. There was no fingerprints or anything. Do we know whether anybody else stayed in the bedroom? Is there any testimony on that? There's no testimony. There was identification found from other people. One was his girlfriend, who apparently stayed with him in the bedroom. Yes. There were other items that were likely affiliated with him that were found in the bedroom, right? Additional drugs? There was four pounds of marijuana. And a scale. A scale, other evidence. In our second position, though... Excuse me, counsel. Where was his shirt found? I believe that there was a reference in the record to a shirt that appeared to be the shirt that he was wearing during the surveillance of the marijuana farm. I'd have to look at that. I know it was found in the residence. I don't remember if it was in the bedroom or not. But there was some evidence that he stayed in the room. There was evidence that other people were at the residence. There was no specific evidence he ever used the shotgun. No fingerprints. And our other argument is that the shotgun was unloaded and there's no real evidence connecting it to the marijuana offenses other than its proximity to the room that had... Well, is there anything in the record? And I just want to make sure I understand the facts correctly. Is there anything that we can glean from the record that indicates where in that room the shotgun was located? Anything at all? No, I mean, the only thing that's in the record is really the pre-sentence report. Correct. And it just says in the bedroom. So if we made a rule that said that so long as a firearm is in a room where a person resides, that is sufficient to establish possession. What would be wrong with that? I think it's, I mean, it's very fact specific type of inquiry. But in this case, where there's multiple people in the house, where he stayed there at times but not all the time. But he stayed there. I mean, his daughter testified, or excuse me, she was interviewed and indicated that she, that he stayed there and his girlfriend stayed there. Why shouldn't that be enough? Because there's no evidence he ever had used it, possessed it. We don't know where the shotgun was found. May have been in a closet. The application. Anything that would indicate how large this residence was? I mean, it's not in a bedroom. I mean, this is probably not a very big bedroom. I don't know anything about the size of the house. There were more than one bedroom. Would we have to speculate then to determine whether or not it was a small bedroom or not? I mean, I guess we would have to speculate, wouldn't we, to determine if that bedroom was small, large. If it was in the closet, under the bed, in a hidden compartment, in a bag, in some drawer somewhere. I mean, we have to speculate to determine where that gun was, that unloaded shotgun, correct? Well, our position is that the evidence is not sufficient to show that he possessed a firearm. The record says only that it was found in a bedroom. It doesn't say where in the bedroom it was found. Could the district court take into account the four pounds of marijuana and the scale? And the seeds? Doesn't this all fall in the same category, that it's in the bedroom, other people had access to the bedroom, so it isn't necessarily his? That's correct. The district court didn't specifically refer to the marijuana or the seeds. It did refer to the hunting, to the rifle, I mean, the shotgun. But it didn't make any specific reference. But it did seem to suggest that he was affiliated with the bedroom. Now, would that be error for the same reason that you're describing the gun, that is, other people had access to that bedroom? I think it would be an error. That's our position. It's error because other people had access. We don't know that the marijuana belonged to him. That's correct. Or the scale. That's correct. The ID is yes. Yes. Well, but the ID was not found in the room, correct? It was found elsewhere in the residence. I believe it was found in the residence. And would it be... So we know it was error for the judge when imposing the two-level enhancement to indicate that the ID was found in the room.  That part of it was an error. Whether or not that's enough is another question. But that part was an error. Would you understand that to be the case? Yes, and that would be considered a clear error, and the court could remand for the court to make a redetermination. And, sorry, Judge Blake. Counsel, you're sort of, by mentioning the remand, you're raising something here. Is there anything in the record to suggest that the district court chose that, this sentence, for reasons other than it was the low end of the guidelines range? Which, had there been a plea agreement, that might very well have been the plea agreement. But as you said, there's no plea agreement here. It seems to me that under Booker, the district court could have imposed this sentence completely independent of either of the firearms because it made a distinction between Mr. Sanchez-Cruz and the co-defendants in their 120-month sentence. So, is there anything that happened below that would be indicative of what the district court's intentions were in that regard? Well, the court imposed the sentence at the low end of the guideline range. It was 135 to 151. If the two-level enhancement for possession of a firearm is error, you get down to the 120-month mandatory minimum. And, depending on- If the district court was still inclined to impose the 120, but it would not be error for the district court to impose 135, would it? It would probably be within the- The range. In the guideline range, or it potentially was within his discretion. Judge Fitzgerald's point is, with or without the enhancement, you're well within the range. I'm not arguing that it's substantively unreasonable. I mean, the court could consider all the factors and potentially impose a sentence. But the general rule is that if it's procedural error, a guideline error is procedural error, and that is a reversible error. Counsel, we've peppered you with questions. You have 47 seconds. Do you want to save the remainder of the time?  All right. Morning, Mr. Spencer. Good morning. May it please the court, David Spencer for the United States. I'd like to begin by just briefly answering Judge Fitzgerald's question about where the shirt was found. The shirt was found in the same room as the shotgun and the marijuana. That's at ER 107, and that was a shirt that Sanchez-Cruz was seen wearing at the growth site two and a half weeks earlier. Can you point me to the ER record where it's established where the firearm was actually located in that room? Your Honor, it would be PSR paragraph 16. It does not say where within the room it was found. It just says that the shotgun was found. Oh, that's my specific question. Where in the room, is there any evidence indicating in any of the record indicating that where that firearm was found? Not where within the room, just that it was in the room, Your Honor. And you agree that it was error for the judge to indicate that the basis for the two-level enhancement was that the ID was found in the room. That was error, correct? The district court made a slight mistake in stating that the wallet and the Mexican passport were found in the room with the shotgun. In fact, they were found at the residence. I don't think that matters, though, because there's ample evidence that Mr. Sanchez-Cruz had been eating. Well, let's talk about that evidence, the evidence that he was in that room. And it's not evidence of in general possession. It's possession of that firearm. So what evidence in the record is it that he possessed that firearm? Yes, Your Honor, so the standard is there has to be sufficient evidence to support the inference that the defendant has dominion and control over the firearm. There's several categories of evidence. First is, as this court's already referenced, the daughter's statement, that Mr. Sanchez-Cruz stayed in that room, that that was his room. That sometimes his girlfriend stayed there. There's also the shirt that was his shirt. He was wearing at the Marijuana Grow right there in the same bedroom. There's the marijuana itself, the packaged marijuana, the seeds, the cultivation tools, the materials for distributing it, the packaging materials, the scale. All of that is evidence the district court could rely on that this was Sanchez-Cruz's room because he was the one involved in the Marijuana Grow operation, not his innocent family members. I guess what do we do with comment 11 of the sentencing guidelines? Comment 11 says to us that once you establish possession, then you apply the enhancement, but you wouldn't apply it in this example that they gave us. For example, the enhancement would not be applied if the defendant arrested at a defendant's residence had an unloaded hunting rifle in the closet. So that seems to suggest certainly that we need to know where the firearm is located in order for us to establish the possession. At least that's what that comment seems to suggest, doesn't it? I think that comment is distinguishable for a couple of reasons, Your Honor. One, it calls it a hunting rifle. It's in the common. It's in a different locked area here. It's a shotgun. It's in the same room as drugs. The court could reasonably infer, and it certainly wasn't clear air to infer. Are you suggesting that a shotgun is not a hunting firearm? It could be, but it's fact-specific and it's context-specific, and here it's with valuable drugs and the court could infer that it was there to protect them. But going back to the comment, though, the comment seems to suggest that in that situation, that the sentencing guideline in there, in the guidelines, comment 11 says, hey, this would not apply if a firearm is in a closet and it's unloaded. Here we have an unloaded shotgun. We don't know where that's located, yet this judge applied this enhancement. Wouldn't it make sense to just send it back, let the judge determine whether or not this is sufficient for them to determine that he possessed it? No, Your Honor, and the key difference between this and the shotgun is the presence of the drugs in the room. Those are valuable drugs. The court could reasonably infer it was there to protect them. Regardless of where they were located. So if they were located in a hidden compartment, that would be sufficient. If the drugs were located in a hidden compartment, if the gun was located in a hidden compartment, the drugs were located underneath the bed. If the gun was located in a closed drawer somewhere, that's enough. It's very fact specific, Your Honor, and I read the note 11 comment to be saying that you have a house where there's not drugs right there, you just have a hunting rifle in a closet, that's not sufficient, but that's not this case, and here we're on an abusive discretion standard of review, and so the question is. But we don't know where that rifle is, that shotgun, is that correct? We know it's in the room. Do you know where the, do you actually know, maybe it's not in the record, but do you know where the rifle was or the shotgun was located? My memory from the reports and the photographs is that it was leaning against a wall in that bedroom, but that's not in the record, as you noted. It's not on the record. Okay. Thank you. Counsel, what is the situation with the papers? You suggested in your brief that the papers were not indicative of the access of others to either the residence or the room, and what's your basis for that assertion? Yes, Your Honor, it's discussed in detail in the brief, but if you look at some of the vehicle records, vehicle maintenance records, some of those vehicles, while they're in other people's names, are actually vehicles that Mr. Sanchez-Cruz was using in furtherance of the conspiracy to go and take supplies and visit the marijuana grow. And so what it actually shows is those are his documents. He controls cars that are registered in other people's names. Another, one of the things they point to is the girlfriend's ID. Well, that's evidence that Mr. Sanchez-Cruz also stayed in the room with his girlfriend, like the daughter said. So there were two vehicles found at the residence? Correct, Your Honor. Okay. Which ones? I don't remember, and I don't think it says, that's PSR paragraph 16, but there were documents or indicia in Mr. Sanchez-Cruz's name found in each of the vehicles. What about the pistol that was later, as you put in your brief, later actually being 15 months later, at the marijuana farm, and then the .40 caliber pistol, and then the rifle, which I guess the PSR says was seen during the surveillance. You argue that that could be supportive of the enhancement, even though the district court didn't rely on the .40 caliber pistol. What's your basis for arguing that the pistol could also support the enhancement? Yes, Your Honor. Of course, this court can affirm on any basis supported by the record. That's the Nichols case. PSR paragraph 37 cited both the shotgun that the district court explicitly relied on, but also the .40 caliber handgun that was found at the Gros as another independent sufficient basis to apply the two-level enhancement. Really the only argument that the defense has made in this court or below in his formal objections that the pistol should not apply was that it was found 15 months later. The problem with that is, as the PSR notes and as the district court found at ER 48, there was actually cell phone evidence from one of the co-defendants in the Gros that showed the co-defendants actually physically possessing that pistol in the Gros at the time of the conspiracy among the marijuana plants. Well, that might be sufficient for the co-defendants, but then what's the basis for attributing that possession to Mr. Sanchez-Cruz here? Two bases, Your Honor. The first is there's sufficient evidence that he had dominion and control over the items at the Gros because he set up the Gros, he supplied it, and he visited at planting season, harvest season. He was the organizer of all the activity, and so there's sufficient basis he had dominion and control of the items there. But second, it's also within his relevant conduct under Sentencing Guidelines 1B1.3. As argued in the brief, it's a three-part test. The first two are that it's within the scope of an in furtherance of the conspiracy. Here it was because it's there to protect the valuable marijuana plants. And then the third element is that it's reasonably foreseeable to Sanchez-Cruz. Here it was because it's common for marijuana traffickers to possess firearms to protect their products. That's the Butcher and Ferryman case that's cited in our brief. And unless the Court has any further questions, I'd ask the Court to affirm both of the sentencing enhancements. Any other questions? I have no further questions. All right. Thank you very much. Thank you, Your Honor. Just two things. One, response to the Court's question at paragraph 16, it just says there were two vehicles located at the residence. It doesn't say which two vehicles. It doesn't identify which ones. I think he used four different vehicles up at the site. There was a Honda, a Lexus, a Mercedes, and a Silverado. Four different vehicles were at the site, yes. My other point was that the government made the same argument regarding the pistol at the marijuana garden that was found 15 months later. The defense objected. The district court specifically did not make a finding of possession with respect to that  pistol. It only found that finding of possession with respect to the shotgun in the residence. All right. Any additional questions? All right. Thank you, sir.  The case of United States v. Sanchez-Cruz is submitted. We thank counsel for your presentation. Thank you very much.
judges: BYBEE, MENDOZA, Fitzgerald